## LOGAN *v.* DAVIS.

ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

No. 247. Submitted March 9, 1914.—Decided May 11, 1914.

Under § 237, Judicial Code, this court has jurisdiction to review a judgment of a state court denying a claim duly set up under a confirmatory patent issued under § 4 of the Land Grant Adjustment Act of 1887 and holding that the patentee was not entitled to the benefit of the provisions of that section.

The decision of the Secretary of the Interior that the grantee of a railroad company was a purchaser in good faith in the sense of the Adjustment Act of 1887, is conclusive so far as it is based on fact and cannot be disturbed except as it may be grounded upon an error of law, there being no charge of fraud.

The practical interpretation of an ambiguous or uncertain statute by the Executive Department charged with its administration is entitled to the highest respect; and, if acted upon for a number of years, will not be disturbed except for very cogent reasons.

Successive Secretaries of the Interior having uniformly interpreted the remedial sections of the Adjustment Act of 1887 as embracing pur-

chases made after the date of the act, no less than prior purchases, if made in good faith, and many thousands of acres having been patented to individuals under that interpretation, this court will not now disturb it. *Knepper* v. *Sands*, 194 U. S. 476, distinguished.

A remedial statute is to be construed liberally so as to effectuate the purpose of the legislative body enacting it; and so *held* as to the Adjustment Act of 1887. *United States* v. *Southern Pacific Railroad Co.*, 184 U. S. 49.

One is a purchaser in good faith within the sense of § 4 of the Adjustment Act of 1887, if he is in actual ignorance of defects in the railroad company's title and the transaction is an honest one on his part, the ordinary rule respecting constructive notice being inapplicable. *United States* v. *Winona & St. Peter R. R. Co.*, 165 U. S. 463.

147 Iowa, 441, reversed.

THIS case arises out of conflicting claims to 80 acres of land in O'Brien County, Iowa, under the act of March 3, 1887, c. 376, 24 Stat. 556, as amended February 12, 1896, c. 18, 29 Stat. 6, providing for the adjustment of railroad land grants, etc. The land is within the place limits of the grant made May 12, 1864, c. 84, 13 Stat. 72, to the State of Iowa to aid in the construction of a railroad from Sioux City, in that State, to the southern boundary of Minnesota. The grant was *in præsenti* and embraced every alternate section, designated by odd numbers, for ten sections in width on each side of the road, with the usual exceptions and provision for indemnity. The company which was to construct the road and receive the benefit of the grant was to be designated by the State legislature. Upon the presentation of a certificate by the Governor of the State that any section of ten consecutive miles of the road was completed, the Secretary of the Interior was to issue to the State patents for one hundred sections of land "for the benefit of" the company constructing the road, and this was to be repeated as each additional ten miles was constructed until the entire road was completed and all the lands patented. If the road was not completed within ten years from the company's acceptance of the grant,

the lands "granted and not patented" were to revert to the
State to enable it to secure the completion of the work;
and if the road was not completed within five years after
the expiration of the ten years, then the "lands undis-
posed of" were to revert to the United States.   The Sioux
City and St. Paul Railroad Company was designated by
the State legislature as the beneficiary of the grant in
1866, the company accepted it in the same year, and a
map definitely locating the line of the road was filed with
the Secretary of the Interior and approved in 1867.   As so
located, the road was about 80 miles in length.   In 1872
the company constructed it from the southern boundary of
Minnesota to Le Mars, Iowa, a distance of 56.25 miles,
but the remaining part was never constructed, a trackage
right to Sioux City over another road being acquired by
the company.   In 1872 and 1873 the Governor certified
that five sections of ten miles each, constituting fifty
miles of continuous road from the southern boundary of
Minnesota, had been completed and put into operation
conformably to the granting act, and the Secretary of the
Interior thereupon caused a large amount of lands within
the primary and indemnity limits of the grant to be
patented to the State "for the use and benefit of" the
company, the tract in controversy being among those so
patented.   Most of the lands patented to the State were
soon conveyed by it to the company, but some were not,
this tract being among the latter.   The company, however,
was claiming it in virtue of the grant and the patent to the
State.   Litigation was had between this company and
another, by reason of their overlapping land grants, to
determine which was entitled to this tract and others
within the overlap, and by the final decree in 1886 this
tract was awarded to this company.   117 U. S. 406.   In
truth, more land was patented to the State for the benefit
of the company, and more land was conveyed by the
State to the company, than the latter was entitled to

receive for the five ten-mile sections of completed road, not counting the additional 6.25 miles, and in 1882 the State legislature passed an act declaring that the State thereby resumed all lands "which have not been earned" by the company, but the act did not more definitely point out the lands intended to be resumed. Laws Iowa, 1882, c. 107. And in 1884 the State legislature passed an act declaring (§ 1) that all lands resumed and intended to be resumed by the act of 1882 "are hereby relinquished and conveyed to the United States," and also (§ 2): "The governor of the State of Iowa is hereby authorized and directed to certify to the Secretary of the Interior all lands which have heretofore been patented to the State, to aid in the construction of said railroad, and which have not been patented by the State to the Sioux City & St. Paul Railroad Company, and the list of land so certified by the governor shall be presumed to be the lands relinquished and conveyed by section one of this act. *Provided*, that nothing in this section contained shall be construed to apply to lands situated in the counties of Dickinson and O'Brien." Laws Iowa, 1884, c. 71. The tract in controversy, being in O'Brien County, came within the excepting words of the proviso.

This tract was part of an odd-numbered section of land immediately adjoining the third ten-mile section of constructed road, the completion of which was duly certified by the Governor, and was unreserved, unappropriated and vacant at the date of the granting act and at the time the line of road was definitely located. Thus it was not only a part of the lands granted but was earned by actual construction. And, strictly speaking, it was rightly patented to the State for the benefit of the company, the excess in the lands patented being caused by the inclusion in the patents of other lands differently situated and not earned by the completion of the five ten-mile sections of road.

September 11, 1888, while the tract was still free from

any homestead, preëmption or kindred claim and while the patent therefor, issued to the State in 1873 for the benefit of the company, was still outstanding, Ellen M. Childs purchased the tract from the company, paying $88.00 in cash and agreeing to pay ten deferred instalments with interest thereon, making the full price $1,270.64, which was the fair value of the land. At the time of her purchase the tract was in the actual and undisputed possession of the company through a tenant named Fitzgerald, who then became her tenant, and through him she continued in the undisturbed possession until October 8, 1889, when she sold to Logan, the plaintiff in error, who paid her $228.00 in cash and took the land subject to the payment of the ten deferred instalments. Fitzgerald then became the tenant of Logan and remained in possession in that capacity until the spring of 1890, when Davis, the defendant in error, with a gang of men and teams, went upon the land, took possession of it, and began cultivating the larger part of it. In what he did Davis acted without the consent of Logan and with knowledge of Mrs. Childs' purchase from the company in 1888, of her sale to Logan in 1889, and of Fitzgerald's possession as tenant of Mrs. Childs and then of Logan. Although subsequently maintaining the possession obtained in the spring of 1890, Davis did not reside upon the tract or erect any buildings upon it.

In October, 1889, the United States brought a suit— the bill was filed October 4 and the subpœna was served October 8—against the company under the adjustment act of March 3, 1887, supra, to regain the title to nearly 22,000 acres of land in Dickinson and O'Brien Counties, including this tract, theretofore patented to the State for the benefit of the company, the theory upon which such relief was sought being that the company had received a larger quantity of other lands than it was entitled to receive under the granting act and therefore

could not properly claim the 22,000 acres. In the Circuit Court the United States prevailed, and this court affirmed the decree. 159 U. S. 349. The ground upon which the decision rested is indicated by the following extract from the opinion (p. 370): "Our conclusion, then, is that the Sioux City company, having failed to complete the entire road, for the construction of which Congress made the grant in question, was not entitled to the whole of the lands granted, but, at most, only to one hundred odd-numbered sections—as those sections were surveyed, whatever their quantity—for each section of ten consecutive miles constructed *and certified by the governor of the State;* and that, according to the measurement of 1887, which is accepted as the basis of calculation, the railroad company had, prior to the institution of this suit, received more lands, on account of the fifty miles of constructed road, certified by the governor, than it was entitled to receive. Under this view, it is unnecessary to inquire whether the particular lands here in dispute should not have been assigned to the company, rather than other lands, containing a like number of acres, that were, in fact, transferred to it, and which cannot now be recovered by the United States, by reason of their having been disposed of by the company. If the company has received as much, in quantity, as should have been awarded to it, a court of equity will not recognize its claim to more in whatever shape the claim is presented."

There was no attempt to make Mrs. Childs, Logan, or the tenant Fitzgerald a party to that suit. During its pendency, and on May 13, 1894, Logan entered into an agreement in writing with the company whereby the latter extended the time for paying the ten deferred instalments until ninety days after a decision should be rendered in the suit by this court, and whereby he agreed that if the decision should be adverse to the company he would ac-

cept from it the amount already paid, with interest, in full satisfaction of all demands against the company on account of the failure of the title.

Shortly following the decision of this court in that suit the lands recovered by the United States, including this tract, were regularly restored to public entry in conformity with the provisions of the adjustment act, and a contest at once ensued in the Land Department over this tract. Logan, claiming to be a purchaser in good faith, applied for a confirmatory patent under § 4, and Davis, claiming to be a *bona fide* occupant, sought to obtain title under the homestead law. A hearing before the local land office, at which the parties presented such evidence as they had in support of their respective claims, resulted in a decision by the local officers in favor of Davis. This was affirmed by the Commissioner of the General Land Office on the theory that the agreement of March 13, 1894, was fatal to Logan's claim as a purchaser; and upon an appeal to the Secretary of the Interior the decisions below were reversed, it being found and held by the Secretary that Logan was a purchaser in good faith within the meaning of § 4 of the adjustment act; that the agreement of March 13, 1894, did not alter his status as a purchaser; and that Davis' possession, acquired after the purchase by Logan and with knowledge of it, did not eliminate the element of good faith from the latter's purchase or otherwise defeat his claim. As a result of this decision, Logan made the requisite payment to the Government (see amendatory act of February 12, 1896, *supra*) and was given a confirmatory patent.

It is conceded that Mrs. Childs and Logan were both citizens of the United States and in that respect within the remedial provisions of § 4 of the adjustment act, and also that in the contest before the Land Department Logan testified that at the time of his purchase from Mrs. Childs in 1889 he had no knowledge of any adverse claim to the

tract.  The present record, however, does not purport to
contain all the evidence produced in that contest.

When the proceeding in the Land Department was con-
cluded Logan sued Davis in the local state court to re-
cover the possession, and by the pleadings subsequent to
the petition the character of the action was so far changed
that Davis sought to have Logan declared a trustee of
the title for him, Davis, and directed to convey the same
to him, and Logan sought to have his title quieted as
against Davis, as well as to recover the possession.  In
Davis' pleading Logan's right under the confirmatory
patent was assailed upon the grounds (1) that the grant
of 1864 was completely and finally adjusted by the legisla-
tion and action of the State in 1882 and 1884, and so was
not within the operation of the adjustment act of 1887,
(2) that the remedial provisions of § 4 of that act were
confined to purchases made prior to the date of the act,
and so were not applicable to Mrs. Childs' purchase in
1888 or Logan's purchase in 1889, (3) that Mrs. Childs
and Logan were bound to take notice of the various acts
and matters bearing upon the company's right to this
tract, and so it was legally impossible for either to be a
purchaser in good faith within the meaning of § 4, and
(4) that the decision of the Secretary of the Interior, re-
versing the action of the local officers and of the Com-
missioner of the General Land Office, was given "unlaw-
fully and without any authority of law." The last ground
evidently was intended as a mere conclusion from the
others, for nothing else was alleged to make it even color-
able.  The case was heard upon an agreed statement of
facts, the substance of which has been recited, and a decree
was rendered in favor of Davis, which was affirmed by
the Supreme Court of the State.  147 Iowa, 441.  That
court held that Logan was not a purchaser in good faith
within the meaning of § 4 of the adjustment act of 1887,
and this upon the theory (a) that he was presumed to have

known the character of the company's title and (b) that
§ 4 was not applicable to a purchase made after the date
of the act.   To reverse that decision Logan prosecutes
this writ of error.

*Mr. William Milchrist, Mr. George C. Scott* and *Mr. W.
D. Boies* for plaintiff in error:

Defendant cannot maintain counterclaim.   Plaintiff is
entitled to protection under the act of March 3, 1887.
The United States and defendant are estopped.

In support of these contentions, see *Atherton* v. *Fowler,*
96 U. S. 211; *Bausman* v. *Eads,* 48 N. W. Rep. 769; *Branon*
v. *Worth,* 17 Wall. 32; *Cahn* v. *Barnes,* 5 Fed. Rep. 399;
*Gibbons* v. *United States,* 5 Ct. Cls. 416; *Hosmer* v. *Wallace,*
97 U. S. 575; *In re McKeag,* 99 Am. St. Rep. 80; *Knepper*
v. *Sands,* 194 U. S. 476; *Knevels* v. *Railroad Co.,* 62 Fed.
Rep. 224; *Logan* v. *Davis,* 147 Iowa, 442; *Lyle* v. *Patterson,*
228 U. S. 211; *McCravy* v. *Remsen,* 54 Am. Dec. 194; *Ol-
son* v. *Traver,* 26 L. D. 350; *Peters* v. *Jones,* 35 Iowa, 512;
*Portis* v. *Hill,* 98 Am. Dec. 481; 2 Pomeroy's Eq. (3d ed.),
§ 813; *Quimby* v. *Conlan,* 104 U. S. 180; *State* v. *Jackson
R. R. Co.,* 69 Fed. Rep. 116; *State* v. *Milk,* 11 Fed. Rep.
389; *State* v. *Flint Co.,* 51 N. W. Rep. 103; *Swanson* v.
*Sears,* 224 U. S. 180; *United States* v. *Southern Pacific
R. R.,* 184 U. S. 49; *United States* v. *Winona R. R. Co.,*
165 U. S. 463.

*Mr. Madison B. Davis* and *Mr. Edwin J. Stason* for
defendant in error:

There is no Federal question involved.   Plaintiff in
error was not a good faith purchaser.   Defendant had
a right to make homestead entry.   Equitable estoppel is
not available to plaintiff in error.

In support of these contentions, see 11 Am. & Eng.
Ency. (2d ed.), 434; 21 *Id.,* 588; 26 *Id.* 397, 398; *Ard* v.
*Brandon,* 156 U. S. 537; *Atherton* v. *Fowler,* 96 U. S. 513;

*Arkansas &c. R. Co.* v. *German Nat'l Bank,* 207 U. S.
270; *Bacon* v. *Texas,* 163 U. S. 207; *Bement* v. *National
Harrow Co.,* 186 U. S. 70; *Benner* v. *Lane,* 116 Fed. Rep.
407; *California Powder Co.* v. *Davis,* 151 U. S. 389; *Cas-
tillo* v. *McConnico,* 168 U. S. 674; *Clements* v. *Warner,* 24
How. 394; *Clark* v. *Lyster,* 155 Fed. Rep. 513; *De Saussure*
v. *Gaillard,* 127 U. S. 216; *Delaware City Co.* v. *Reybold,*
142 U. S. 636; *Dower* v. *Richards,* 151 U. S. 658; *Duluth
&c. R. Co.* v. *Roy,* 173 U. S. 587; *Elder* v. *Wood,* 208 U. S.
226; *Egan* v. *Hart,* 165 U. S. 188; *Eustis* v. *Bolles,* 150
U. S. 370; *Fowler* v. *Lamson,* 164 U. S. 252; *Giles* v. *Teasley,*
193 U. S. 146; *Gillis* v. *Stinchfield,* 159 U. S. 658; *Gjer-
stadengen* v. *Van Duzen* (Nor. Dak.), 76 N. W. Rep. 233;
*Hamblin* v. *Western Land Co.,* 147 U. S. 531; *Hammond*
v. *Johnson,* 142 U. S. 73; *Harrison* v. *Morton,* 171 U. S.
38; *Hedrick* v. *Atchison &c. R. Co.,* 167 U. S. 673; *Hale*
v. *Lewis,* 186 U. S. 473; *Johnson* v. *Risk,* 137 U. S. 300;
*Knepper* v. *Sands,* 194 U. S. 476; *Leathe* v. *Thomas,* 207
U. S. 93; *Leonard* v. *Vicksburg &c. R. Co.,* 198 U. S. 416;
*Logan* v. *Davis,* 147 Iowa, 441; *Lyle* v. *Patterson,* 228
U. S. 211; *Lake Superior Iron Co.* v. *Cunningham,* 155 U. S.
354; *Manley* v. *Tow,* 110 Fed. Rep. 241; *Mo. Pac. Ry.
Co.* v. *Fitzgerald,* 160 U. S. 556; *Moran* v. *Horsky,* 178
U. S. 205; *Moss* v. *Donovan,* 176 U. S. 413; *Murdock* v.
*Memphis,* 20 Wall. 590; *Nelson* v. *Nor. Pac. R. Co.,* 188
U. S. 108; *Olson* v. *Traver,* 26 L. D. 350; *Ostrom* v. *Wood,*
140 Fed. Rep. 294; *Pierce* v. *Somerset R. Co.,* 171 U. S.
641; *Pittsburg Iron Co.* v. *Cleveland Iron Co.,* 178 U. S.
270; *Rakes* v. *United States,* 212 U. S. 58; *Remington
Paper Co.* v. *Watson,* 173 U. S. 443; *Rutland R. Co.* v.
*Cent. Ver. R. R. Co.,* 159 U. S. 630; *Seaboard &c. R. Co.*
v. *Duvall,* 225 U. S. 477; *Seneca Nation* v. *Christy,* 162
U. S. 263; *S. C. & St. Paul R. Co.* v. *Osceola County,* 43
Iowa, 318; *S. C. & St. Paul R. Co.* v. *United States,* 159
U. S. 349; *Speed* v. *McCarthy,* 181 U. S. 269; *Smith* v.
*Hollenbeck,* 231 Illinois, 484; *St. Louis &c. R. Co.* v.

*McGee,* 115 U. S. 469; *St. Louis &c. R. Co.* v. *Missouri,* 156 U. S. 478; *Walker* v. *Ehresman* (Neb.), 113 N. W. Rep. 218; *Weyerhauser* v. *Minnesota,* 176 U. S. 550; *Wood Machine Co.* v. *Skinner,* 139 U. S. 293; *Waters-Pierce Oil Co.* v. *Texas,* 212 U. S. 112.

Mr. Justice Van Devanter, after making the foregoing statement, delivered the opinion of the court.

As Logan claimed as a purchaser in good faith within the meaning of § 4 of the adjustment act of 1887, under which a confirmatory patent had been issued to him, and the Supreme Court of the State denied that claim and held that he was not entitled to the benefit of the provisions of that section, the judgment is so plainly subject to review by this court under § 237 of the Judicial Code that a contention to the contrary, found in one of the briefs, is dismissed as not justifying further comment. *Gauthier* v. *Morrison,* 232 U. S. 452.

And as the Secretary of the Interior found, from the evidence submitted in the contest before the Land Department, that Logan was a purchaser in good faith in the sense of the adjustment act, and no basis was laid in the pleadings or agreed statement of facts for rejecting or disturbing that decision save as it was said to be grounded upon error of law and misconstruction of the statute, it is manifest that unless some of the objections urged against it on that score are well taken, Logan's title should be sustained. *Vance* v. *Burbank,* 101 U. S. 514, 519; *Lee* v. *Johnson,* 116 U. S. 48; *Gertgens* v. *O'Connor,* 191 U. S. 237, 240; *Ross* v. *Day,* 232 U. S. 110, 116

The act of 1887, in its first section, authorized and required the Secretary of the Interior immediately to adjust, in accordance with the decisions of this court, the several land grants made by Congress to aid in the construction of railroads "and heretofore unadjusted." This included

the grant made by the act of 1864, unless already adjusted. That it had not been adjusted by the Land Department is conceded, but it is insisted that it had been adjusted by the legislation and action of the State in 1882 and 1884, and so was not within the operation of the adjustment act of 1887. To this we cannot assent. The United States had not committed the adjustment to the State, and neither had the State assumed to make an adjustment for the United States. Prior to the act of 1887 the administration of the several railroad land grants rested with the Land Department, of which the Secretary of the Interior is the head, *Catholic Bishop of Nesqually* v. *Gibbon,* 158 U. S. 155, 166–7, and some of the lesser grants had progressed to a final adjustment in regular course of administration. It was because of this that the restrictive words "and heretofore unadjusted" were inserted in the act. They meant only that adjustments theretofore effected by the Land Department in regular course were not to be disturbed. The facts before recited amply illustrate that this grant had not proceeded to such an adjustment. The Secretary of the Interior treated it as unadjusted, *Sioux City & St. Paul R. R. Co.,* 6 L. D. 54, 71, and this court impliedly, if not expressly, approved his action. *Sioux City & St. Paul Railroad Co.* v. *United States,* 159 U. S. 349.

The second section of the act of 1887 related to the recovery by the United States of lands which, upon the completion of any adjustment, or sooner, appeared to have been erroneously certified or patented by the Land Department "to or for the use or benefit of any company" claiming under a grant to aid in the construction of a railroad. The third section related to the reinstatement of preemption and homestead entries found, in the course of any adjustment, to have been erroneously canceled by reason of such a grant or a withdrawal, and directed that where the entryman failed to apply for reinstatement within a

reasonable time, to be fixed by the Secretary of the Interior, the land should be disposed of under the public-land laws to *bona fide* purchasers, if any, and, if there were none, then to *bona fide* settlers. The fourth section read as follows:

"That as to all lands, except those mentioned in the foregoing section, which have been so erroneously certified or patented as aforesaid, and which have been sold by the grantee company to citizens of the United States, or to persons who have declared their intention to become such citizens, the person or persons so purchasing in good faith, his heirs or assigns, shall be entitled to the land so purchased, upon making proof of the fact of such purchase at the proper land office, within such time and under such rules as may be prescribed by the Secretary of the Interior, after the grants respectively shall have been adjusted; and patents of the United States shall issue therefor, and shall relate back to the date of the original certification or patenting, and the Secretary of the Interior, on behalf of the United States, shall demand payment from the company which has so disposed of such lands of an amount equal to the Government price of similar lands; and in case of neglect or refusal of such company to make payment as hereafter specified, within ninety days after the demand shall have been made, the Attorney General shall cause suit or suits to be brought against such company for the said amount: *Provided,* That nothing in this act shall prevent any purchaser of lands erroneously withdrawn, certified, or patented as aforesaid from recovering the purchase-money therefor from the grantee company, less the amount paid to the United States by such company as by this act required: *And provided,* That a mortgage or pledge of said lands by the company shall not be considered as a sale for the purpose of this act, nor shall this act be construed as a declaration of forfeiture of any portion of any land-grant for conditions broken, or as au-

thorizing an entry for the same, or as a waiver of any rights that the United States may have on account of any breach of said conditions."

This section was amended February 12, 1896, c. 18, 29 Stat. 6, by adding to it the following:

"*Provided further*, That where such purchasers, their heirs or assigns, have paid only a portion of the purchase price to the company, which is less than the Government price of similar lands, they shall be required, before the delivery of patent for their lands, to pay to the Government a sum equal to the difference between the portion of the purchase price so paid and the Government price, and in such case the amount demanded from the company shall be the amount paid to it by such purchaser."

Section five related to lands apparently within such a grant and lying opposite the constructed parts of the road, but excepted from the operation of the grant and not certified or patented to or for the benefit of the railroad company, and provided that where any such land was sold by the company to a *bona fide* purchaser, who was a citizen of the United States or had declared his intention to become such, the purchaser, his heirs or assigns, could obtain a patent by paying the ordinary Government price, but that this privilege should not exist if at the time of the sale by the company the land was occupied by an adverse claimant under the preëmption or homestead laws.

Whether § 4 was confined to purchases made prior to the date of the act, or equally included subsequent purchases, where made in good faith, is one of the controverted questions in the case. Both views have support in the terms of the act, and if the question were altogether new there would be room for a reasonable difference of opinion as to what was intended. Certainly, resort to interpretation would be necessary. But the question is not altogether new. It has often arisen in the administration of the act, and successive Secretaries of the Interior uniformly have

held that the remedial sections embraced purchases after the date of the act, no less than prior purchases, if made in good faith. *Sethman* v. *Clise*, 17 L. D. 307; *Holton* v. *Rutledge*, 20 L. D. 227; *Andrus* v. *Balch*, 22 L. D. 238; *Briley* v. *Beach, Id.* 549; *Re Carlton Seaver,* 23 L. D. 108; *Neilsen* v. *Central Pacific Railroad Co.,* 26 L. D. 252. Many thousands of acres have been patented to individuals under that interpretation, and to disturb it now would be productive of serious and harmful results. The situation therefore calls for the application of the settled rule that the practical interpretation of an ambiguous or uncertain statute by the Executive Department charged with its administration is entitled to the highest respect, and, if acted upon for a number of years, will not be disturbed except for very cogent reasons. *United States* v. *Moore,* 95 U. S. 760, 763; *Hastings and Dakota Railroad Co.* v. *Whitney,* 132 U. S. 357, 366; *United States* v. *Alabama Great Southern Railroad Co.,* 142 U. S. 615, 621; *Kindred* v. *Union Pacific Railroad Co.,* 225 U. S. 582, 596.

The remedial sections of the act were also considered by this court in *United States* v. *Southern Pacific Railroad Co.,* 184 U. S. 49, 56, which involved several purchases made after the date of the act, and it was there said: "But the act itself bears upon its face evidence that it was not intended to be limited to cases of purchases from the railroad company prior to its date." And, after referring to the language of §§ 2 and 3, it was added: "This seems to imply an intent that all mistakes of the nature referred to which shall have occurred up to the very completion of the adjustment may be rectified. Section 4 makes provision for the issue of patents to certain purchasers from railroad companies, providing proof shall be made 'within such time and under such rules as may be prescribed by the Secretary of the Interior, after the grants respectively shall have been adjusted.' While other sections may not be so specific, yet placing them

alongside of those from which quotations have been made
it is reasonable to hold that the act applies not merely
to transactions had before its date, but to any had before
the time of final adjustment.  In this case the several
grants to the Southern Pacific have not yet been finally
adjusted.  Further, it must be borne in mind that this
is a remedial statute, and is to be construed liberally, and
so as to effectuate the purpose of Congress and secure
the relief which was designed, and the mere date of the
transaction between the purchaser and the railroad com-
pany is not of itself vital in determining whether there is
or is not an equity in behalf of the purchaser."

Counsel for Davis rely upon *Knepper* v. *Sands*, 194
U. S. 476, as placing a different interpretation upon the
adjustment act.  But, although some broad language is
found in the opinion, the real decision did not go as far as
suggested.  The case came here upon a certificate from
a Circuit Court of Appeals, and the question presented
for decision, considering the facts stated in the certificate,
was, whether a purchase from the railroad company of
land erroneously patented for its benefit under the grant
of 1864 could be esteemed a purchase in good faith, within
the meaning of § 4 of the act of 1887, where at the time of
the purchase the land was occupied by a *bona fide* settler
who was residing upon, improving and cultivating the same
with a view to acquiring it under the homestead law.  The
question was answered in the negative, particular emphasis
being laid upon the settler's occupancy at the time of the
purchase and upon the well known policy of favoring
actual settlers.  The answer must have been the same
whether the purchase was before or after the date of the
act, and manifestly there was no purpose to overrule or
qualify the decision in *United States* v. *Southern Pacific
Railroad Co.*, *supra*, for it was not even mentioned.  So,
reading the opinion in *Knepper* v. *Sands* with appropriate
regard for the facts of the case, we think it is not in point

or controlling here, for no one was occupying or claiming this tract under the settlement laws at the time it was purchased from the company.

The contention that Logan was charged with constructive notice of the defect in the company's title and so was not a purchaser in good faith, in the sense of the adjustment act, must be overruled, as was a like contention in *United States* v. *Winona & St. Peter Railroad Co.*, 165 U. S. 463. It was there said, referring to the remedial provisions of § 4 (p. 480): "It will be observed that this protection is not granted to simply *bona fide* purchasers (using that term in the technical sense), but to those who have one of the elements declared to be essential to a *bona fide* purchaser, to wit, good faith. It matters not what constructive notice may be chargeable to such a purchaser if, in actual ignorance of any defect in the railroad company's title and in reliance upon the action of the Government in the apparent transfer of title by certification or patent, he has made an honest purchase of the lands. The plain intent of this section is to secure him the lands, and to reinforce his defective title by a direct patent from the United States, and to leave to the Government a simple claim for money against the railroad company." And, referring to the provisions of § 5, it was further said (p. 481): "It is true the term used here is '*bona fide* purchaser,' but it is a *bona fide* purchaser from the company, and the description given of the lands, as not conveyed and 'for any reason excepted from the operation of the grant,' indicates that the fact of notice of defect of title was not to be considered fatal to the right. Congress attempted to protect an honest transaction between a purchaser and a railroad company, even in the absence of a certification or patent." This view of the purpose and meaning of the act was repeated and applied in *Gertgens* v. *O'Connor*, 191 U. S. 237, and *United States* v. *Chicago, Milwaukee & St. Paul Railway Co.*, 195 U. S. 524

As it thus appears that the decision of the Secretary of the Interior was right in point of law, and as it was conclusive upon all questions of fact (*Gertgens* v. *O'Connor, supra*), it follows that the state court erred in not sustaining Logan's title obtained under that decision.

*Decree reversed.*