Charles S. Allen, Respondent, *v.* D. Maitland Armstrong, Appellant.

*Contract of employment — construed to authorize commissions not upon estimated, but upon earned, profits.*

A contract of employment provided that the employee should be paid "a commission on all orders which may come to the firm from clients which he has already personally secured, or which he may personally secure in the future. Said commission to be 10% on all orders from which accrue the usual profits, and 5% on orders from which half the usual profit is secured; special orders of greater or smaller profit to be arranged at the time of taking them."

*Held*, that the contract did not contemplate the payment of commissions upon estimated profits;

That profits could not be said to "accrue" or be "secured" within the meaning of the contract until they had become fixed or payable.

*Semble*, that parol testimony is competent to explain the meaning of the term "usual profits."

Appeal by the defendant, D. Maitland Armstrong, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 1st day of September, 1900, upon the report of a referee.

*Mornay Williams*, for the appellant.

*Arnold L. Davis* and *William B. Ellison*, for the respondent.

Hatch, J.:

The action was brought by the plaintiff on a written contract, to recover certain commissions and salary alleged to be due him thereunder.

By the contract the defendant agreed to employ the plaintiff and pay him the sum of $2,000 a year for his services as general manager and accountant for the business of Maitland Armstrong & Co.; and the defendant agreed to faithfully perform said duties to the best of his ability and in accordance with the wishes and general directions of said D. Maitland Armstrong. It was further agreed that the plaintiff should be paid "a commission on all orders which may come to the firm from clients which he has already personally secured, or which he may personally secure in the future. Said commission to be 10% on all orders from which accrue the usual

profits, and 5% on orders from which half the usual profit is secured; special orders of greater or smaller profit to be arranged at the time of taking them."

The claim for salary is for the last two weeks of the employment, amounting to seventy-seven dollars. The claim for commissions arises on certain specified contracts, some of which, it is conceded, were not completed at the time the action was brought.

The answer sets up, *first*, a general denial; and, *second*, separate defenses and counterclaims, on the ground of failure of the plaintiff to keep the books of the defendant, false representations alleged to have been made by the plaintiff to the defendant with reference to the state of accounts and an alleged claim for misappropriation of moneys of the defendant. The referee awarded judgment to the plaintiff upon both his alleged causes of action and dismissed the counterclaims of the defendant, and from the judgment entered this appeal is taken.

The right of the plaintiff to recover commissions in the action depends upon the construction of the portion of the written agreement hereinbefore quoted. The plaintiff maintains that the commissions provided for were to be estimated, and that they "accrued" and had been "secured" within the meaning of the contract when the orders were taken and accepted by the defendant, while the defendant contends that such commissions were contingent and made to depend upon the actual profits accruing and secured when the contracts had been fully closed.

In accordance with the plaintiff's contention, the referee held that the profits upon contracts which the plaintiff had secured or might secure had accrued and were secured at the time when the contracts for the performance of the work had been entered into. In reaching this conclusion the referee held that the term "usual profits" was ambiguous, and consequently parol testimony was admissible to show what the contract meant. It is quite clear that nothing which is contained in the contract shows what were the usual profits which the defendant obtained, and undoubtedly parol testimony was competent for the purpose of showing what were the usual profits earned by the defendant in the performance of the contracts, as such proof would be necessary, not to explain or vary the terms of the contract, but to show a basis for the commissions to be awarded to the plain-

tiff for the contracts which he had secured or might secure.   But
this fact is entirely aside from the significance to be attached to the
language contained in the contract entitling the plaintiff to commis-
sions.   By its terms he was entitled to ten per cent on all orders
from which " accrued " the usual profits, and five per cent on orders
from which half the usual profits were " secured," special orders of
greater or smaller profits to be arranged at the time of taking them.
Reading this clause as a whole, it is clear that there is no ambiguity
whatever.   The ten per cent is to be paid upon profits which
" accrue," the five per cent upon profits which are " secured," and
special contracts such rate of compensation as may be agreed.
Profits may not be said to have accrued until they have become
fixed or payable.   Nor can they be said to have been secured until
they have been earned and either paid or placed in such form as to
enable the party to realize thereon.   Until that time nothing has
been accomplished from which profits can arise, and the commissions
are only payable upon profits.   The popular signification of these
words indicates that the thing to which they refer has been reduced
to possession or so placed that possession may be secured — in other
words, that the right to receive is definite, determined and fixed.
The technical meaning of the word " accrue," as defined in the dic-
tionary, is the possession of a present enforcible right.   A note is
said to accrue when it becomes due and payable.   Profits have
accrued when they are paid or when the right to enforce payment
presently exists.   And " secure " means that which is presently
reduced to possession or that of which payment is made sure.   It is
perfectly evident that a construction of these words, which attaches
thereto a contingency which may or may not happen, distorts their
meaning as popularly used and scientifically defined.   Nor can such
meaning be attached to them by any connection with language
appearing in the present contract.   The first provision is to pay
ten per cent on all orders from which " accrue " the usual profits.
It is clearly evident from this language that the ten per cent com-
mission is dependent upon whether profits accrued upon the per-
formance of the contract in the usual amount.   If they do not, then
the plaintiff would not upon that contract become entitled to ten per
cent.   If but half the usual profits were " secured," then he would
fall into the second category and only receive five per cent.   And if

it fell below the latter rate he might or might not receive commissions, dependent upon what should be the special arrangement. It is only in that class of contracts where the usual profits are earned that he becomes entitled to his ten per cent. And the same is true when half profits are earned, when he is to receive five per cent. This is the clear reading of the contract. And the fact that the usual profits which are expected to be received are not fixed, and resort may be had to parol proof to determine their amount, does not, in the slightest degree, make the basis of payment indefinite, uncertain or ambiguous, because the commission is in no event to be paid unless the profits have accrued or been secured. It was undoubtedly contemplated by the parties to the contract that certain contracts would result in producing the usual profits, certain others one-half, and certain others would be the result of special arrangement, and, therefore, provision was made for fixing the commissions which the plaintiff was entitled to receive upon each contract. But payment of the commissions was an entirely different matter, regulated upon a fixed basis, *i. e.*, that profits in the respective amounts must have accrued and been secured by a performance of the contracts.

It can scarcely be within reasonable contemplation that the defendant understood that commissions were to be paid upon estimated profits. The proof in the present case shows that, as to some of the contracts, a very small profit, far below the estimated amount, accrued, as to some there was a loss, and as to others they were not completely performed at the time of the commencement of the present action. The construction for which the plaintiff contends would compel the defendant to pay commissions at a greater rate than upon the profits which he received, and, in some cases, to pay commissions upon profits when there was an actual loss. Under such circumstances, it would be most unreasonable to conclude that he was to pay upon estimated profits which were never secured when his contract provides for payment of commissions only upon accrued and secured profits, or by special arrangement. The provision in the contract for the payment of net profits upon the volume of business after $12,000 had been set aside to the credit of the defendant, adds no strength to plaintiff's contention of the construction which the contract should receive. It related to an

entirely different matter; and right thereto was made dependent not alone upon the contracts which the plaintiff should secure, but upon the whole volume of business which should be done, and from which profits in the specified amount should be derived. It was a provision for additional compensation to the plaintiff to be figured upon an entirely different basis, and has no more bearing upon that clause of the contract providing for commissions than does the clause in the contract providing for payment of salary at the rate of $2,000 a year.

We conclude, therefore, that the learned referee fell into error in his construction of the contract. And as the judgment which has been entered is in large measure dependent thereon, it cannot be sustained.

It is by no means certain that upon the testimony the defendant should not have succeeded upon the counterclaim charging the plaintiff with the misappropriation of funds. It would be a task of some difficulty to find in the plaintiff's testimony proof showing that he replaced the moneys which he took in excess of any sum which was due to him, either for commissions or salary. We do not, however, discuss this question, nor is our decision dependent thereon. The proof may be different upon another trial, and the plaintiff may supply the omission, if it exists.

For the reasons already stated we reach the conclusion that the judgment should be reversed and a new trial ordered before another referee, with costs to the appellant to abide the event.

VAN BRUNT, P. J., RUMSEY, PATTERSON and INGRAHAM, JJ., concurred.

Judgment reversed, new trial ordered before another referee, costs to appellant to abide event.