## HOFFMAN et al. v. UNITED STATES.

### No. K-85.

Court of Claims.
Oct. 20, 1931.

Ralph C. Williamson, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and WHALEY, WILLIAMS, LITTLETON, and GREEN, Judges.

GREEN, Judge.

The plaintiffs bring this suit as executors of the estate of Herman H. Hoffman, deceased, to recover $21,183.89 taxes alleged to have been unlawfully collected from the said Herman H. Hoffman, or his estate, for the year 1917 upon dividends received from the Democrata Cananea Sonora Copper Company.

The parties have stipulated as to the facts, and those material to the decision of the case will be hereinafter stated.

The Democrata Cananea Sonora Copper Company was organized in 1905. On March 1, 1913, it had an operating loss of $211,185.-84, and the Commissioner found the value of its ore reserves at that date to be $1,059,-101. The value of the ore reserves at that date is not stated in the stipulation, but the value so fixed by the Commissioner was a very large increase over the cost of the ore deposits, and the amount thereof can be computed approximately from the other facts stated in the stipulation. It is not necessary, however, that this computation be made, as it is not disputed that such increase was more than sufficient to cover any dividend distributions which are in controversy herein.

Frank J. Albus, of Washington, D. C., for plaintiffs.

In 1916 the copper company made three dividends aggregating $860,991, and in 1917 a dividend of $286,997. There is no controversy over the taxation of the 1916 dividends, it being conceded that more than sufficient profits had been earned since March 1, 1913, to cover the amount thereof. These dividends, however, will have to be considered in determining in connection with items of profit and loss the amount which could be distributed free from tax in 1917. Herman H. Hoffman, of whose estate the plaintiffs are executors as above stated, held 84 per cent. of the stock of this copper company and received dividends accordingly. He filed an income tax return for the year 1917 showing a tax liability of $27,224.78, which was paid. There were further assessments, claims in abatement, payments, and refunds until finally, in the year 1926, there had been paid by the estate on the taxes for 1917 and not refunded the sum of $84,509.63. Plaintiffs filed an application for a refund of part of this sum, which, having been denied, was followed by this suit. The basic facts upon which the claim is based are as follows:

On March 12, 1917, the copper company made a distribution to its stockholders of $286,997, to which reference has already been made. On the basis of 84 per cent. of the capital stock held by Herman H. Hoffman, he received from the distribution of this dividend the sum of $239,610. The plaintiffs concede that at the time of the payment of the 1917 dividend the copper company had 1917 earnings available for dividends in the sum of $18,025.94, and on this basis $15,141.59 of the amount received by Hoffman was paid out of 1917 earnings available for dividends and was taxable. The balance or remainder of the dividend received by Hoffman, plaintiffs contend, was not taxable. The Commissioner, however, taxed the entire balance of $224,468.41 at the rates in effect for 1916.

The fundamental issue between the parties is whether this action of the Commissioner was in accordance with law.

Some further explanation is necessary in order that the contentions of the respective parties may be understood. Counsel for plaintiffs asserts that a distribution out of an increase in the value of the property of the corporation which accrued prior to March 1, 1913, is exempt from tax, and all through his argument refers to the increase in value of the property of the copper company as having "accrued" prior to March 1, 1913, or as "realized appreciation" before that date, and submits a computation by which he undertakes to show that "$211,139.03 of the dividend paid on March 12, 1917, was out of realized appreciation which had accrued prior to March 1, 1913, and was, therefore, nontaxable in the hands of the stockholders."

Counsel for defendant does not dispute the proposition that an increase in value that had accrued prior to March 1, 1913, may be distributed free of tax to the stockholders, but contends that the increase in value of the property of the copper company did not accrue and was not accrued prior to March 1, 1913, and was not actually realized until after that date. In other words, the contention on behalf of the defendant is that the increase in value of the property of the company merely occurred or came into existence prior to March 1, 1913, and did not become fixed or realized until the company after that date sold a portion of its property in the course of its operations. Until then and only then, as counsel for defendant contends, did this increase in value become "accrued." It will be observed that the case turns on the proper meaning and construction to be given the word "accrued" as used in the statutes applicable to the case, the consideration of which will next be taken up.

■ The Commissioner assessed the tax in controversy under the 1916 and 1917 Revenue Acts. Both of these acts (39 Stat. 757, § 2(a); 40 Stat. 337, § 31(a) made exempt from the individual income tax dividends out of any earnings or profits which "accrued" prior to March 1, 1913, and, as before stated, it is conceded on behalf of the defendant that, if the increase in value "accrued" prior to that date, dividends made therefrom would be exempt. As a general rule, the word "accrued," when used in statutes imposing an income tax, means "fixed" or "realized." Under the circumstances of this case it is evident that no profits could be "realized" until the ore had been mined and sold. In fact, until the sale occurred, it was uncertain whether there would ever be any profit on the ore. A great depreciation might occur, such as has taken place with reference to copper within a very recent period, which would make the value of the ore reserves less instead of greater than cost, and, when sold, instead of realizing a profit, there would be a loss. In this case the profit did not become fixed until after March 1, 1913, for no profit was realized until after that date.

In Allen v. Armstrong, 58 App. Div. 427, 68 N. Y. S. 1079, 1081, it was said: "Profits have accrued when they are paid or, when the

right to enforce payment presently exists. Profits may not be said to have accrued until they have become fixed and payable," and therefore a contract requiring the payment of a certain sum when profits have "accrued" means when they have become fixed or payable.

But the profits on the ore in the mine did not become fixed until the ore was sold, and, no profit being realized until that time, the profit did not *accrue* until after the sale, if we give the word its ordinary significance and meaning.

That a mere increase in value is not a gain or profit taxable as income under our revenue laws has been clearly established by the decisions of the Supreme Court. In Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 193, 64 L. Ed. 521, 9 A. L. R. 1570, the court explained what was meant by income and what gains and profits are subject to tax as income under the Sixteenth Amendment. In the opinion on this case the court said: "Here we have the essential matter: *not a gain accruing to* capital; not a *growth* or *increment* of value *in* the investment; but a gain, a profit, something of exchangeable value, *proceeding from* the property, *severed from* the capital, however invested or employed. * * *"

Stating the matter conversely, "a growth or increment of value in the investment" is not income, neither is it a gain "accruing" to capital. A gain or profit, as distinguished from an increase in value, is "something of exchangeable value proceeding from the property, severed from the capital"; that is, it must be separate from the capital. If an "increment of value" in the investment is not income, then an increase in value is not income, for increment and increase mean the same thing as applied to the subject now under consideration.

Lynch v. Turrish, 247 U. S. 221, 38 S. Ct. 537, 62 L. Ed. 1087, and Lynch v. Hornby, 247 U. S. 339, 38 S. Ct. 543, 544, 62 L. Ed. 1149, are cited as authorities for plaintiffs' position. But we think what was said by the Supreme Court in the case of Lynch v. Turrish, supra, has no application to the one at bar. In that case it appeared that a corporation having property which it had acquired prior to March 1, 1913, and which had increased in value up to that date, sold it and distributed the proceeds among its stockholders. It was held that this transaction was a distribution of capital and the gain was not taxable. In the instant case the property originally acquired was not sold until after it had been converted by mining operations which resulted in a profit over and above the March 1, 1913, valuation. From the proceeds in the transaction, including the operating profit, ordinary dividends were declared.

In Lynch v. Hornby, supra, a dividend distribution made out of an increase prior to March 1, 1913, in the value of the property of a corporation was held to be taxable, and the court distinguished the Turrish Case, saying that that case was one "where the distribution in question was a single and final dividend received by Turrish from the Payette Company in liquidation of the entire assets and business of the company and a return to him of the value of his stock upon the surrender of his entire interest in the company." No such case is before us for consideration, and we therefore hold that the Turrish Case is not controlling.

In Lynch v. Hornby, supra, the Supreme Court was considering the taxation of corporate dividends made under the 1913 act and held that under its provisions net taxable income includes " * * * all dividends declared and paid in the ordinary course of business by a corporation to its stockholders after the taking effect of the act (March 1, 1913), whether from current earnings, or from the accumulated surplus made up of past earnings or increase in value of corporate assets, notwithstanding it accrued to the corporation in whole or in part prior to March 1, 1913."

Counsel for plaintiffs quote from the same decision: "In the more recent Income Tax Acts, provisions have been inserted for the purpose of excluding from the effect of the tax any dividends declared out of earnings or profits that accrued prior to March 1, 1913. This originated with the act of September 8, 1916, and has been continued in the act of October 3, 1917."

As the dividends in controversy in that case appear to have been paid in part at least from an increase in the value of the property of the corporation occurring prior to March 1, 1913, it is contended on the part of plaintiffs that the statement last quoted above from the opinion shows that the court held, in effect, that under the 1916 and 1917 acts a distribution out of any increase in value of property occurring *prior* to that date which resulted in a gain or a profit realized *after* that date was not taxable under those acts.

There is nothing in the opinion of the court that supports such a conclusion. The question to be decided by the court was whether Congress might lawfully tax divi-

dends received in the ordinary course by a shareholder from a corporation, even though they had been derived from the surplus of corporate assets existing before the income tax amendment, and it held that dividends made after March 1, 1913, were taxable, "whether from current earnings, or from the accumulated surplus made up of past earnings or increase in value of corporate assets, notwithstanding it [they] accrued to the corporation in whole or in part prior to March 1, 1913." In order that this sweeping statement might not be understood to apply to every case under the acts of 1916 and 1917, it is further stated in the opinion that these acts exclude "from the effect of the tax any dividends declared out of *earnings or profits* that accrued prior to March 1, 1913" (italics ours) ; but there is no intimation that the 1916 or 1917 act made any change with reference to a mere increase in value. The earnings and profits excluded from the operation of the 1916 and 1917 acts were those which had *"accrued prior* to March 1, 1913." Even if we concede that an increase in value is a profit, the earnings and profits which we are considering in this case had not been received or realized until *after* that date. Moreover, the 1916 and 1917 acts do not mention "increase in value of property." This fact and the further fact that the Supreme Court did not refer to "increase in value" as being affected by the 1916 and 1917 acts show that Lynch v. Hornby, supra, instead of being an authority in favor of plaintiffs' position, is against it, and, following the reasoning above set forth, we conclude that under the 1913, 1916, and 1917 acts all of the dividend received by Hoffman was taxable. This conclusion, however, does not dispose of the case.

Counsel for plaintiffs calls attention to article 623 of Regulations 74 as follows: "Any distribution by a corporation out of earnings or profits accumulated prior to March 1, 1913, or out of increase in value of property accrued prior to March 1, 1913 (whether or not realized by sale or other disposition, and, if realized, whether prior to or on or after March 1, 1913), is not a dividend within the meaning of Title I [of the 1921 act]"—and also to other regulations made by the Commissioner containing a similar rule and making it applicable to all of the Revenue Acts from 1916 to 1926, inclusive.

Under these regulations any part of the dividend in controversy which was paid "out of increase in value of property accrued prior to March 1, 1913," would not be taxable, even though the increase in value had not re-

sulted in a realized profit until after that date.

We have been furnished with no argument in support of this regulation, which seems to have been followed by the Bureau for a long period. Counsel for plaintiffs apparently considers that the regulation by reason of long-continued application has come to have the force of law, and counsel for defendant, in order to support its case, is obliged to make an argument along lines utterly inconsistent with the regulation.

If this regulation finds any support in the law, it is contained in section 201 (b) of the Revenue Act of 1921 (42 Stat. 228), which is set out below.[1] In the absence of argument, we infer that the Bureau of Internal Revenue considered that the regulation carried out the purpose and intent of the provision of the 1921 statute with reference to "increase in value of property" and was retroactive in its effect. The regulation therefore gives rise to two questions: First, whether the provisions of the 1921 statute under consideration are susceptible of the construction given in the regulation; and, if so, second, whether its provisions are retroactive.

To determine these questions it becomes necessary to analyze this provision and find the intent and purpose of Congress in enacting it.

Section 201 of the Revenue Act of 1921 relates to dividends, and subdivision (b) thereof (now under consideration) states what dividends shall be exempt. The provision is administrative in its nature, and declares that "any earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, may be distributed exempt from the tax. * * *" Here again the word "accrued" is used, which, as we have heretofore shown, usually means "realized" or "fixed," and it might be so construed here if the context did not in-

[1] Section 201 (b) of the Revenue Act of 1921 reads as follows: "(b) For the purposes of this act every distribution is made out of earnings or profits, and from the most recently accumulated earnings or profits, to the extent of such earnings or profits accumulated since February 28, 1913; but any earnings or profits accumulated or *increase in value of property accrued prior to March 1, 1913*, may be distributed exempt from the tax, after the earnings and profits accumulated since February 28, 1913, have been distributed. If any such tax-free distribution has been made the distributee shall not be allowed as a deduction from gross income any loss sustained from the sale or other disposition of his stock or shares unless, and then only to the extent provided in section 202 exceeds the sum of (1) the amount realized from the sale or other disposition of such stock or shares, and (2) the aggregate amount of such distributions received by him thereon." (Italics ours.)

dicate otherwise. But it will be observéd that "earnings or profits accumulated" are included in the same clause and the same rule applied thereto when such accumulation took place prior to March 1, 1913; also that there is a further proviso to the effect that a distribution of such profits or increase in value can only be made "after * * * profits accumulated since February 28, 1913," have been distributed. But an increase in value that had been realized would become a part of accumulated profits unless absorbed by a deficit. If we construe "accrued" as meaning "fixed" or "realized" in this provision, there would be no necessity to insert the words "increase in value of property accrued," for such increase would be included in the words "profits accumulated." We need therefore to look for some other meaning which will be consistent with the remainder of the provision. The word "accrue" sometimes means "to arise," and "accrued" sometimes means "has arisen" or "come into existence." If given this meaning, the language used in the statute is not confused, but harmonious; otherwise it is conflicting and inappropriate.

In determining the meaning to be given these words as intended by Congress, we are assisted by the statement of the managers on the part of the House explaining the conference report on the 1921 bill.

As originally passed by the House, section 201 (b) merely made exempt from taxation a distribution out of "any earnings or profits accumulated prior to March 1, 1913." The Senate, by amendment No. 18, inserted, after the words "any earnings or profits accumulated," the words "or increase in value of property accrued." The managers on the part of the House reported back to that body a statement with reference to this amendment which is set out in a note below.[2] It will be observed from this statement that this amendment was intended to remove a "doubt in the existing law as to the right of a corporation to distribute tax free the increase in value of property accrued prior to March 1, 1913," but, if it is held that the word "accrued" as used in the amendment means "fixed" or "realized," no doubt would be removed, but a confusion would be added. Moreover, the statement calls attention to the

provision in the amendment that "such increase may be distributed to the stockholders free from tax after the earnings and profits accumulated since February 28, 1913, have been distributed." As stated above, if we hold that the word "accrued" is used in the 1921 act as meaning "fixed" or "realized," the whole of the amendment becomes meaningless, for increase in value that was *realized* after February 28, 1913, would be a part of "profits accumulated." It would seem that both House and Senate intended to distinguish an *"increase in value* of property accrued prior to March 1, 1913," from "profits accumulated," and in the 1921 act used the word "accrued" as meaning "occurred" or "has arisen" or "has come into existence."

There is grave doubt, to say the least, as to whether the 1921 act standing by itself and alone should be construed as being retroactive, and, were it not for the regulations of the Bureau, which have been in force so long, we would have grave doubts as to whether it should be so construed. As bearing upon this question it will be noted that the provision under consideration is administrative and that the House managers stated that the amendment inserting the words "or increase in value of property accrued" was inserted to remove "a doubt in the existing law." We think this might possibly be construed to indicate a purpose and intent that in administering the provision it should be applied to all cases, regardless of whether they arose before or after the enactment of the 1921 statute. At all events, it was so applied by the Bureau in accordance with one of the regulations which we have hereinabove set out.

This construction of the 1921 act, as before stated, has been followed by the Bureau of Internal Revenue almost uniformly for a long period and applied to the preceding taxing statutes. In Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 117, 74 L. Ed. 457, it is said: "It is the settled rule that the practical interpretation of an ambiguous or doubtful statute that has been acted upon by officials charged with its administration will not be disturbed except for weighty reasons. Logan v. Davis, 233 U. S. 613, 627, 34 S. Ct. 685, 58 L. Ed. 1121."

And also: "The substantial re-enactment in later acts of the provision theretofore construed by the Department is persuasive evidence of legislative approval of the regulation. National Lead Co. v. United States, 252 U. S. 140, 146, 40 S. Ct. 237, 64 L. Ed. 496. * * * The subsequent legislation confirmed and carried forward the policy evidenced by the earlier enactments as inter-

---

[2] "Amendment No. 18: This amendment removes a doubt in the existing law as to the right of a corporation to distribute tax free the increase in value of property accrued prior to March 1, 1913, by providing that such increase may be distributed to the stockholders free from tax after the earnings and profits accumulated since February 28, 1913, have been distributed; and the House recedes."

preted in the regulations promulgated under them."

The provision under consideration has been re-enacted by Congress and continued down to the present time without substantial change.

Taking all of the matters stated above into consideration, we conclude that the Bureau regulation which we have hereinbefore set out should now be treated as expressing the intent of Congress and the proper interpretation of the law as applied to the instant case.

Having determined that an increase in value which came into existence prior to March 1, 1913, can be distributed free of tax, it next becomes necessary to determine whether in the instant case there was any distribution out of an increase in the value of the corporation's property, which occurred prior to that date, and, if so, the amount thereof.

In order to find whether any part of the dividend in question had been distributed from the increase in value of the corporate property, it becomes necessary to determine the profits and losses of the company for each year after March 1, 1913. The stipulation does not state what these profits and losses were, but it is merely a mathematical proposition to compute them from the figures given in the stipulation. The method, where the operating profits exceed the amount of all depletion, is as follows:

The operating profit for 1913, after depletion on cost, is stipulated, and also the amount of depletion on cost. If these two items are added, it gives the operating profit before depletion on cost. Then as the depletion based on the March 1, 1913, value is stipulated, we have only to deduct the amount of this depletion to ascertain the net profit on the basis of the March 1, 1913, value.

In case there is an operating loss or deficit, or the depletion exceeds the amount of operating profit, the principle is the same, but the calculation necessarily different. In a note below[3] we present the computation of

the net profits and losses of the copper company for each year on the basis of the March 1, 1913, valuation. This does not determine whether any part of the dividend was paid out of the increase in the value of the property of the corporation; but, so far as it goes, we think its accuracy will not be disputed.

Taking this computation as a basis, we shall undertake to apply the law thereto in order to determine the ultimate question in the case.

The parties agree that $18,025.94 of the 1917 dividend, which is in controversy, was taxable. This was the net operating profit of January 1, 1917, to March 12 of the same year, after deducting the depletion on the March 1, 1913, valuation, as shown by the computation, and is taxable because it was earned during the year that the dividend was made. In the year 1916, the net operating profit, after deducting depletion on March 1,

---

[3] Computation of net profits and losses of copper company on the basis of the March 1, 1913, valuation:

Period, March 1, 1913, to December 31, 1913:

| | |
|---|---:|
| Operating profit after cost depletion (stipulated) | $ 132,533 71 |
| Cost depletion (stipulated) | 37,583 17 |
| Operating profit before depletion on cost | 170,116 88 |
| Depletion on March 1, 1913, value (stipulated) | 120,803 94 |
| Net profit on basis of March 1, 1913, value | 49,312 94 |

Period, January 1, 1914, to December 31, 1914:

| | |
|---|---:|
| Operating deficit after cost depletion (stipulated) | —27,781 70 |
| Cost depletion (stipulated) | 17,617 00 |
| Operating deficit before depletion | —10,164 70 |
| Depletion on March 1, 1913, value (stipulated) | 64,016 71 |
| Net deficit on basis of March 1, 1913, value | —74,181 41 |

Period, January 1, 1915, to December 31, 1915:

| | |
|---|---:|
| Operating profit after cost depletion (stipulated) | 17,991 63 |
| Cost depletion (stipulated) | 13,690 18 |
| Operating profit before depletion | 31,681 81 |
| Depletion on March 1, 1913, value (stipulated) | 49,747 42 |
| Net deficit on basis of March 1, 1913, value | —18,065 61 |

Period January 1, 1916, to December 31, 1916:

| | |
|---|---:|
| Operating profit after cost depletion (stipulated) | 1,212,638 22 |
| Cost depletion (stipulated) | 58,589 21 |
| Operating profit before depletion | 1,271,227 43 |
| Depletion on March 1, 1913, value (stipulated) | 212,901 64 |
| Operating profit after deducting depletion on March 1, 1913, value | 1,058,325 79 |
| Dividends | 860,991 00 |
| Profit not distributed in dividends | 197,334 79 |

Period, January 1, 1917, to March 12, 1917:

| | |
|---|---:|
| Operating profit after cost depletion (stipulated) | 37,308 94 |
| Cost depletion (stipulated) | 7,321 36 |
| Operating profit before depletion | 44,630 30 |
| Depletion on March 1, 1913, value (stipulated) | 26,604 36 |
| Net operating profit after March 1, 1913, depletion | 18,025 94 |
| Dividend March 12, 1917 | 286,997 00 |
| Amount distributed above earnings for 1917 | $ 268,971 06 |

1913, value, exceeded the dividends made that year by $197,334.79. Under the 1917 act, the dividend made in that year (1917) was "deemed to have been made from the most recently accumulated undivided profits or surplus." Revenue Act 1916, § 31(b), as added by Revenue Act 1917, § 1211 (40 Stat. 336). In the case of Edwards v. Douglas, 269 U. S. 204, 46 S. Ct. 85, 89, 70 L. Ed. 235, undivided profits are distinguished from surplus, and it is held in effect that the meaning of the term "undivided profits," as used by Congress, is "current undistributed earnings," and it is also said in the same case that the purpose of the act was to "treat as a unit the profits of the whole tax year." This $197,334.79, which remained over out of the net profits for the year 1916 after the dividends of that year had been distributed, was therefore undivided profits within the meaning of the law and most recently accumulated. It may be claimed that there were deficits prior to 1916 which must be taken into consideration. But this point was disposed of by the case of Blair v. United States, 63 Ct. Cl. 193 (certiorari denied), wherein it was held in effect that if a corporation earned sufficient to pay the dividend in the year in which it was made the fact that it had prior losses would not affect the taxability of the dividend. It is true that in the instant case the dividend was actually paid in a subsequent year, but under the law the sum of $197,334.79 must be deemed to have been distributed out of the 1916 profits.

The question still remains as to whether the remainder of the dividend above the sums of $18,025.94 and $197,334.79 was taxable. These two sums exhausted the profits made in 1917 and also 1916 which had not already been distributed in dividends. If there were any other profits out of which the dividend in controversy might have been distributed, they must be found in the years between March 1, 1913, and January 1, 1916. It becomes necessary, therefore, to ascertain what disposition was made of any profits earned during that period.

The table which is found in note 3 shows that after March 1, 1913, to December 31, 1913, there was a net profit of $49,312.94. For the period from January 1, 1914, to December 31, 1914, there was an operating deficit upon the basis of cost depletion of $27,781.70, and a deficit on the basis of March 1, 1913, value of $74,181.41. The year 1915 showed an operating profit after cost depletion, but an operating loss on 1913 value. We have already shown that, while these losses exceeded the operating profit in

1913, that did not prevent, under the statute, the taxability of the operating profits of 1916 and 1917. But the losses which occurred in 1914 and 1915 exceeded the profits made in 1913, and the question arises whether the remainder or any part of the dividend can be taken out of the profits made in 1913, notwithstanding the losses sustained in 1914 and 1915 exceeded the amount of these profits. We think not. It appears to us that the profits of 1913 cannot be said to have been "recently accumulated" when losses occurred for the two succeeding years which more than exceeded these profits. If the profit of 1913 had been distributed in that year, we think it would have been taxable, notwithstanding there was an operating deficit prior to March 1 of that year. But it was not distributed. Nothing was done with reference to it, and subsequent losses more than absorbed it, with the result that it could not be said that it was distributed as part of a dividend made in some subsequent year. Moreover, we see no reason why the profits or losses for 1915 should be computed on the basis of cost and those of 1916 and 1917 computed on the basis of March 1, 1913, valuation. But a more conclusive reason, as we think, for not giving this construction to the statute, is that it would have the effect of making profits of any year after March 1, 1913, applicable to dividends later on, regardless of the fact that losses greater in amount had subsequently occurred. Under such a construction, a dividend distributed after March 1, 1913, would be taxable in so far as there were earnings and profits in the year distributed and any of the prior years sufficient to pay it. If Congress had intended this result, we think it would have been so stated in language more brief than that used in the statute and more clearly showing such a meaning.

In accordance with the views above expressed, we find that out of the 1917 dividend the amount subject to tax is the sum of the two items of $18,025.94 and $197,334.79, a total of $215,360.73, and we think that this is all that is subject to tax because we consider the remainder ($71,636.27) was paid out of the "increase in value" of the property of the corporation prior to March 1, 1913. Such being the case, under the statute and the Treasury regulations construing it, this last-named sum was exempt from taxation. The term "realized appreciation" has often been referred to in the argument upon the case. The respective counsel differ very much as to its application and precise meaning, but we have no occasion to define this

expression or determine its application, for the statute does not use these words. It might be said, however, that, if it means in this case the same as the increase in value of the property which occurred before March 1, 1913, then under the rules laid down above it would be exempt, and it will be noticed that the portion of the dividend which we have held subject to taxation is a part of the profits which was over and above the March 1, 1913, valuation. Our attention has been called to the fact that the operating deficit for 1914 on the basis of cost was $27,781.70. See table, note 3. This sum subtracted from the net profit of 1913 after depletion on March 1, 1913, value, which is $49,312.94, leaves $21,531.24. In other words, the operating profit from March 1, 1913, to the end of the year on the basis of the March 1, 1913, value, is $21,531.24 greater than the operating loss in 1914, computed on the basis of cost. If this last-named sum be also held subject to taxation, then the amount exempt should be reduced accordingly. But the operating deficit computed on a cost basis was not the real operating loss or deficit. On the basis of March 1, 1913, value the net deficit for 1914 was $74,181.41, which, instead of being $21,531.24 less than the net profit of 1913, greatly exceeded and absorbed it. Moreover, if the operating profit is computed on the basis of cost in order to find profits which are called "realized appreciation," and considered taxable, we think this necessarily includes a part of the increase in value before March 1, 1913, in the amount that may be taxed.

In Edwards v. Douglas, supra, it was said that "to accomplish the purpose of Congress it was necessary that the dividend be deemed to have been paid out of the available profits or earnings of the most recent year or years." But we do not think that earnings were "available" when wiped out by subsequent deficits. We conclude therefore that to the extent of the two sums mentioned as undivided profits in 1916 and 1917 the dividend was subject to taxation. The remainder of $71,636.27 was exempt.

In a reply argument the plaintiffs insist that the Blair Case, supra, has no application, because the corporation which had a surplus on March 1, 1913, also had a surplus on December 31, 1918, sufficient to cover the amount of dividend, but the computation from which this surplus is derived starts with a surplus on March 1, 1913, of $106,460.51. The table included in the reply argument of counsel shows that in the Blair Case the losses after March 1, 1913,

exceeded the gains for the same period by over $20,000. In the instant case, when we include the increase in value, the company had a surplus on March 1, 1913, of over half a million dollars, and, using the method for which counsel contends, there would have been in 1917 a surplus very much larger than the amount of the dividend. But in neither case does this fact have any bearing on the point in issue. The source of the dividend is fixed by the statute, and in this connection it will be noted that the distributed profits which we hold to be taxable were over and above the March 1, 1913, valuation, so that, although an increase of value was realized, no part of the increase in value is included and taxed.

Judgment will be withheld with leave to respective parties to submit a computation of the proper tax and amount to be refunded in accordance with the conclusions stated above. If the parties agree with reference to the result of the computation, judgment will be entered for the amount so fixed; otherwise the court will have the computation made and the judgment entered.

BOOTH, Chief Justice, and WHALEY and WILLIAMS, Judges, concur.

LITTLETON, Judge (dissenting in part).

The question in this case does not involve the earnings taxable to the corporation of which the decedent, Hoffman, was a stockholder, nor does it involve the computation of the earned surplus of the corporation for invested capital purposes, but involves the determination of the amount of appreciation in value of the property existing on March 1, 1913, over cost which was realized by the Democrata Cananea Sonora Copper Company during the period March 1, 1913, to March 12, 1917, which was exempt from tax in the hands of the stockholder when distributed to him by the corporation when it declared and paid a dividend of $286,997 on March 12, 1917.

The solution of this problem lies in keeping in mind certain basic principles which are either specifically set out in the statute or necessarily follow from a proper interpretation of it. It is not correct to say, as the defendant contends, that the depletion allowable on a March 1, 1913, value in excess of the cost is to be disregarded in determining the earnings or profits subject to taxation in the hands of the distributee when a dividend distribution is made. In this case appreciation in value of the ore

reserves existed at March 1, 1913, and, to the extent that it was thereafter from year to year realized, it became a part of the surplus available for distribution as a dividend, but free from tax in the hands of the stockholder.

Leaving out of consideration the question of exhaustion, if a corporation acquired an asset in 1908 at a cost of $200,000 which, on March 1, 1913, had a value of $500,000, there would be no taxable profit to the corporation in the sale of such asset in 1917 at $500,000. The result, however, of such transaction would be the creation of a surplus on the books of the corporation of $300,000 which would be available for distribution without an impairment of capital paid in, but a dividend paid from such surplus would not be taxable to the stockholder any more than a dividend paid out of capital. If such sale be made for $300,000 instead of $500,000, there would again be no taxable profit to the corporation, but there would be a realization by the corporation of appreciation in value existing on March 1, 1913, to the extent of $100,000 which would constitute surplus to the corporation available for distribution as a dividend, but nontaxable in the hands of the distributees when distributed. When property is exhausted or used up in the production of income, the theory of the allowance of a deduction on account of such exhaustion is to consider that, through the exhaustion, there has been a gradual sale of property. United States v. Ludey, 274 U. S. 295, 47 S. Ct. 608, 71 L. Ed. 1054. The same principles, therefore, would apply with respect to the realization by the corporation subsequent to March 1, 1913, of appreciation in value existing on that date, whether realized by actual sale or through a depreciation or depletion allowance.

The foregoing conclusions not only follow from the statute, but also are specifically provided for in the Commissioner's regulations.

I think it cannot be questioned that when a dividend is paid prior to August 6, 1917, without a designation of surplus from which paid, such dividend will be considered to have been paid from the most recently accumulated undivided profits or surplus. I do not understand that the parties disagree as to this feature. We have, however, not only to determine what is the most recently accumulated earned surplus, but also to segregate such surplus as between taxable and nontaxable surplus when distributed. My disagreement with the majority in this case is with

reference to the amount of the deficit or, as it should more properly be designated under the statute, the "realized appreciation" for the calendar years 1914 and 1915 to be charged against surplus in determining the amount exempt from taxation in the hands of the stockholder. This amount is shown as $74,181.41 for 1914 and $18,065.61 for 1915 in the majority opinion. Footnote 3. I think the amount for 1914 should be $27,781.70, which is the amount of the operating deficit after the deduction of depletion on cost, and that the amount for 1915 should be $17,991.63, which is the net earnings after the deduction of depletion on cost and $73.98 less than the difference between depletion on cost and depletion on the March 1, 1913, value. The realized appreciation in any taxable year is always the difference between the amount of depletion allowable on the March 1, 1913, value and that allowable on cost if the corporation has earnings in that amount. The realized appreciation in value existing on March 1, 1913, cannot exceed this amount in any one taxable year. There must be some rule for measuring the portion of the increase in value existing on March 1, 1913, which is earned or realized in subsequent taxable years. If there remain no earnings after deduction of depletion on the basis of cost, there can be no realization in that year by the corporation of any increase in value existing on March 1, 1913, which can be charged against surplus to determine the amount which is exempt from tax to a stockholder when a dividend is paid. Considering the period March 1, 1913, to December 31, 1913, and leaving out of consideration for the present the operating deficit at March 1, 1913, we find earnings for that period of $132,533.71, which would represent accumulated earnings or a proper addition to surplus in that amount. However, in addition to the fact that this amount is insufficient to make up the deficit existing March 1, 1913, and thus create a surplus from which a dividend might be declared, the entire amount does not constitute a taxable dividend to the stockholder when paid for the reason that such amount had been determined without taking into consideration the excess amount of depletion allowable on the March 1, 1913, value of the corporation's ore reserve over the depletion allowable on cost, or the part of the appreciation existing at March 1, 1913, which was realized during the period March 1 to December 31, 1913.

When the appreciation in value realized is taken into consideration it will be found that of the profits realized from March 1 to De-

cember 31, 1913, in the amount of $132,533.-71, $83,220.77 constitutes appreciation existing at March 1, 1913, which is now realized but when distributed as a dividend is exempt from tax to the stockholder, and $49,312.94 constitutes earnings or profits which are taxable to the stockholder when distributed.

In 1914 a different situation exists, for the reason that there is an operating loss for that year when the depletion deduction is computed on cost without considering a deduction based on the appreciated March 1, 1913, value. In such a case, without more evidence as to the nature of the operating loss, it cannot be said that there was any appreciation realized, but rather a loss of $27,-781.70 sustained after deduction of depletion on cost, and there was therefore a loss in that year of a portion of the increase in value over cost existing on March 1, 1913. This operating loss of $27,781.70 existed after the deduction of depletion on the basis of cost, which, however, served to decrease accumulated earnings and also the earnings available for taxable distribution.

And still another situation exists for 1915, in that there is a profit when a depletion deduction is allowed on cost and a loss when the depletion is computed on the March 1, 1913, value. As above stated, appreciation may not be considered as realized by the corporation when there is a loss after the allowance of depletion on cost, and therefore the appreciation realized would be limited to the amount of the operating profit over cost depletion. At the same time there would be an increase in surplus of the amount of the operating profit but no change in the amount available for distribution as taxable dividends. The situation in 1916 is analogous to that already discussed for 1913, and the same principles would apply in determining the increase in surplus, amount available for taxable distribution, and appreciation realized. Based upon the foregoing considerations, the most recently accumulated earnings available for distribution when the dividend of $286,-997 was paid on March 12, 1917, are shown in summary form, as follows:

| Period | Total earnings since March 1, 1913, after depletion on cost | Earnings since March 1, 1913, available for taxable distribution after allowing both cost and appreciation depletion when net earnings over cost depletion justify depletion on the March 1, 1913, value | Appreciation realized since March 1, 1913, difference between depletion allowable on March 1, 1913, value and on cost |
|---|---|---|---|
| March 1, 1913, to December 31, 1913 | $132,533 71 | $49,312 94 | $83,220 77 |
| 1914 | (27,781 70) | (27,781 70) | |
| | 104,752 01 | 21,531 24 | 83,220 77 |
| 1915 | 17,991 63 | | 17,991 63 |
| | 122,743 64 | 21,531 24 | 101,212 40 |
| January 1, 1916, to June 3, 1916 | 513,548 97 | 448,198 08 | 65,350 89 |
| | 636,292 61 | 469,729 32 | 166,563 29 |
| Less: Dividend June 3, 1916 | 286,997 00 | 286,997 00 | |
| | 349,295 61 | 182,732 32 | 166,563 29 |
| June 4, 1916, to September 7, 1916 | 318,069 03 | 277,593 64 | 40,475 39 |
| | 667,364 64 | 460,325 96 | 207,038 68 |
| Less: Dividend September 7, 1916 | 286,997 00 | 286,997 00 | |
| | 380,367 64 | 173,328 96 | 207,038 68 |
| September 8, 1916, to December 11, 1916 | 314,755 81 | 274,702 04 | 40,053 77 |
| | 695,123 45 | 448,031 00 | 247,092 45 |
| Less: Dividend December 11, 1916 | 286,997 00 | 286,977 00 | |
| | 408,126 45 | 161,034 00 | 247,092 45 |
| December 12, 1916, to December 31, 1916 | 66,264 41 | 57,832 03 | 8,432 38 |
| | 474,390 86 | 218,866 03 | 255,524 83 |
| January 1, 1917, to March 12, 1917 | 37,308 94 | 18,025 94 | 19,283 00 |
| | $511,699 80 | $236,891 97 | $274,807 83 |

From the above it appears that at March 12, 1917, when the dividend in question of $286,997 was paid, the earnings accumulated since March 1, 1913, available for taxable distribution, were $236,891.97, and accordingly the remainder of $50,105.03 must be considered to have been paid from appreciation in value existing on March 1, 1913, realized by the corporation subsequent to that date, and exempt from tax to the stockholder when distributed.

The majority opinion holds that the amount of realized appreciation distributed on March 12, 1917, and exempt from tax was $71,636.27, a difference of $21,531.24, which is the exact amount which I show in the foregoing computation as the "earnings since March 1, 1913, available for taxable distribution." ·

As hereinbefore pointed out, an operating loss of $27,781.70 occurred in 1914 when depletion was allowed on cost, and I have reduced the earnings since March 1, 1913, available for taxable distribution in that amount, thus leaving taxable earnings at that time of the aforementioned difference, for the reason that I do not think a loss could result in a realization of appreciation. The deficit of $74,181.41 used in the majority opinion for the period January 1 to December 31, 1914, is computed by allowing as a deduction not only cost depletion, but also depletion on the appreciation in value existing on March 1, 1913; that is, realized appreciation. The majority opinion uses this amount of $74,181.41 to absorb the profit of $49,312.94 in 1913 and holds that the remainder must be absorbed out of the March 1, 1913, value. I am of opinion that appreciation cannot be realized through a loss, even although there were accumulated earnings of a prior year from which the loss might be deducted; and therefore I think the available taxable earnings for 1914 should be reduced only by the loss of $27,781.70 arrived at without allowing a deduction for depletion on appreciation because there were no earnings after cost depletion out of which the corporation could realize any appreciation in that taxable period. The computation in the majority opinion not only increases the loss through a deduction for depletion on appreciation, that is, realization of appreciation, but also uses a part of this "lost realized appreciation" in extinguishing or wiping out the accumulated earnings for the period March 1, to December 31, 1913, to the extent of $21,531.24.

Appreciation in value over cost existing at March 1, 1913, can be lost, but I fail to see how a loss can be created through a realization of appreciation which would wipe out, or extinguish, an earned surplus. The most that the loss would do would be to reduce the existing appreciation, but it would not be correct to say that such a loss reduces or wipes out a created or earned surplus for a prior year. If a corporation in any taxable year has no earnings after the deduction of depletion, or depreciation, on cost, there is no realization in that year of any appreciation in value accrued prior to March 1, 1913, of which the stockholder may take advantage upon the payment of a dividend out of a prior existing surplus. Where there are no earnings left after the allowance of depletion on the basis of cost, the amount by which the depletion on March 1, 1913, value exceeds the cost is not an amount which may be carried backward or forward to be applied against earned surplus so as to exempt a portion thereof from taxation in the hands of the stockholder. The rule that prohibits a corporation from carrying a loss in any year backward or forward, except in certain circumstances not material here, as a deduction from taxable income equally applies in a case of this kind where the question is the amount taxable to a stockholder when a dividend is received by him. If a corporation in any taxable year fails to realize any portion of appreciation in value accruing prior to March 1, 1913, and existing on that date, its surplus is simply not disturbed for the purpose of taxation in the hands of stockholders when distributed. The unrealized appreciation in value existing on March 1, 1913, merely remains subject to realization in subsequent years if the corporation has sufficient earnings for that purpose. The amount of realized appreciation in any taxable year cannot exceed the difference between depletion or depreciation on cost and on March 1, 1913, value, and, if the net earnings of the corporation after depletion on cost is an amount less than the difference between depletion on cost and depletion on the appreciated March 1, 1913, value, the amount of realized appreciation in such taxable year is limited to the amount of earnings remaining after the deduction of depletion or depreciation on cost. This accounts for the difference of $73.98 for 1915 between my computation and that in the majority opinion.

I am of opinion that the amount which should be held exempt from tax when the dividend of $286,997 was paid March 12, 1917, should be $50,105.03. The parties have stipulated that the taxable earnings accumu-

lated in 1917, which were available for distribution on March 12, 1917, were $18,025.94, thus leaving $218,866.03 ($236,891.07 less $18,025.94) taxable at 1916 rates. It accordingly follows that of the dividend of $286,997, $18,025.94 was taxable at 1917 rates and $218,866.03 was taxable at 1916 rates, and that $50,105.03 was nontaxable. The parties have stipulated that the part of the dividend taxable to Hoffman at the 1917 rate is $15,141.79. He held 84 per cent. of the corporation stock, and therefore the part of the dividend taxable at 1916 rates, 84 per cent., or $183,847.47, would be properly allocable to him for taxation at the 1916 rates.

In reaching this conclusion I have not considered the deficit existing at March 1, 1913, for the reason that at all times there was a surplus sufficient to extinguish the deficit and pay the dividend. A dividend can, of course, only be paid when a surplus exists, but, since the surplus existed on each dividend date, which had been accumulated since March 1, 1913, it was sufficient to extinguish the deficit and also pay the dividend, and it is unnecessary to consider the deficit in the computation.

The position of the defendant that the point here involved is analogous to that considered in Blair v. United States, 63 Ct. Cl. 193, is without merit. A consideration of that case and the analysis thereof set out in GCM 3532, C. B. 7-I, page 190, show that not only was there no deficit involved, but also that there was no question as to a March 1, 1913, value.